IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

SEPTEMBER 1997 SESSION

FILED

January 8, 1998

Cecil W. Crowson
Appellate Court Clerk

PHILLIP W. POMEROY,            *       C.C.A. # 01C01-9610-CR-00424

            Appellant,         *       DAVIDSON COUNTY

VS.                            *       Hon. Walter C. Kurtz, Judge

STATE OF TENNESSEE,            *       (Post-Conviction)

            Appellee.          *

For Appellant:

Samuel F. Anderson, Attorney
2016 Eighth Avenue South
Nashville, TN  37204

For Appellee:

Charles W. Burson
Attorney General and Reporter

Elizabeth B. Marney
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN  37243-0493

Tom Thurman
Assistant District Attorney General
Washington Square, Suite 500
222 Second Avenue North
Nashville, TN  37201-1649

OPINION FILED:_____

AFFIRMED

GARY R. WADE, JUDGE

OPINION

The petitioner, Phillip W. Pomeroy, appeals the trial court's dismissal of his petition for post-conviction relief. The single issue presented for review is whether the petition is barred by the statute of limitations.

We find no error and affirm the judgment of the trial court.

On October 31, 1985, the petitioner, after being found guilty of two counts of armed robbery, was determined to be a habitual criminal. The trial court imposed two consecutive life sentences. The convictions and sentences were affirmed on direct appeal. State v. Phillip W. Pomeroy, No. 86-55-III (Tenn. Crim. App., at Nashville, Feb. 12, 1987). On May 11, 1987, application for permission to appeal was denied by the supreme court.

In 1988, the petitioner filed and then voluntarily withdrew his first petition for post-conviction relief. A second petition, filed in 1991, was dismissed by the trial court.[1] On direct appeal, this court determined that guilty pleas entered in 1975 and 1977, which served as the basis for credit offenses necessary for the habitual criminality determination, were validly entered. Phillip Wayne Pomeroy v. State, No. 01C01-9112-CR-00352 (Tenn. Crim. App., at Clarksville, July 17, 1992). The record indicates that a petition for writ of habeas corpus, filed in the United States District Court, was dismissed on May 17, 1993.

This petition, the petitioner's third, was filed April 30, 1996. The trial

---

[1]Tennessee Code Annotated § 40-30-102 provided for a three-year statute of limitations. In State v. Masucci, 754 S.W.2d 90 (Tenn. Crim. App. 1988), the effective date of the statute, July 1, 1986, was interpreted to extend the time for filing of post-convictions claim until July 3, 1989. Although there is no indication in the record as to why the 1991 petition was dismissed, it would appear that the petition would have been barred under the three-year statute of limitations.

court dismissed the petition because it was not timely filed.

The petitioner insists that the trial court should have afforded him an evidentiary hearing to determine whether the statute of limitations as applied in this instance would have violated due process. See Burford v. State, 845 S.W.2d 204 (Tenn. 1992). The petitioner has complained that the reasonable doubt instruction utilized at his trial unconstitutionally shifted the burden of proof from the state. Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328 (1990) (held unconstitutional an instruction equating reasonable doubt with "grave uncertainty" or "actual substantial doubt"). He has argued that the jury instructions requiring a presumption of malice violated his right to due process. Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450 (1979). The petitioner claims that the rulings in Cage and Sandstrom were not recognizable as grounds for relief during the term of the limitations period and that his petition should not be barred by the new one-year statute of limitations. Tenn. Code Ann. § 40-30-202.

Originally, the Post-Conviction Procedure Act of 1967 did not include a statute of limitations. Effective July 1, 1986, the General Assembly adopted a three-year statute of limitations. Tenn. Code Ann. § 40-30-102 (repealed 1995). In consequence, any petitioner whose judgment had become final before July 1, 1986, had only three years thereafter to file a petition for post-conviction relief. Abston v. State, 749 S.W.2d 487, 488 (Tenn. Crim. App. 1988).

Here, the petitioner was subject to the three-year statute of limitations. This legislation allowed the petitioner three years from "the date of the final action of the highest state appellate court to which an appeal [was] taken." Tenn. Code Ann. § 40-30-102 (repealed 1995). The 1995 Act did not enlarge the time within which

3

this petitioner could file as "the enabling provision ... is not intended to revive claims that were barred by the previous [three-year] statute of limitations." Carter v. State, 952 S.W.2d 417, 419 (Tenn. 1997).

In Burford v. State, 845 S.W.2d 204, 208 (Tenn. 1992), our supreme court held that in certain situations application of the statute of limitations in a post-conviction proceeding would violate due process. In determining whether there has been a violation of due process, the essential question is whether the time period allowed by law provides petitioner a fair and reasonable opportunity to file suit. Id. In Burford, the petitioner could not file within the three-year limitation absent a determination on his prior post-conviction petition. Our supreme court ruled that Mr. Burford was "caught in a procedural trap and unable to initiate litigation ... despite the approach of the three-year limitation." Id. There was no such trap here.

In Sands v. State, 903 S.W.2d 297, 301 (Tenn. 1995), our supreme court further defined how courts should apply the Burford test:

> (1) determine when the limitations period would normally have begun to run; (2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are "later arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim. In making this final determination, courts should carefully weigh the petitioner's liberty interest in "collaterally attacking constitutional violations occurring during the conviction process," against the state's interest in preventing the litigation of "stale and fraudulent claims."

(citations omitted) (quoting Burford, 845 S.W.2d at 207, 208).

By the use of these guidelines, we have determined that the statute of limitations for the petitioner's convictions began to run on May 11, 1987, when the

4

Tennessee Supreme Court declined to grant permission to appeal. In our view, the Sandstrom issue would have been available during the limitation periods and, therefore, does not qualify as "later arising." See Allen v. State, 854 S.W.2d 873, 876 (Tenn. 1993); State v. Bolin, 678 S.W.2d 40 (Tenn. 1984); Daniel Carl Brewer v. State, No. 1179 (Tenn. Crim. App., at Knoxville, Feb. 22, 1991). In April 1985, the instruction required by Sandstrom was incorporated into 20.01 of the Tennessee Pattern Instructions--Criminal. See Brewer, slip op. at 4. On December 30, 1985, our supreme court reversed a conviction based on the erroneous burden-shifting charge precluded in Sandstrom as to the issue of malice. State v. Martin, 702 S.W.2d 560 (Tenn. 1985), overruled by State v. Brown, 836 S.W.2d 530 (Tenn. 1992). Moreover, the reasonable doubt instructions used in the 1980 trial of the petitioner have been upheld as compliant with the principles of Cage v. Louisiana. See State v. Nichols, 877 S.W.2d 722, 734 (Tenn. 1994); State v. Sexton, 917 S.W.2d 263, 266 (Tenn. Crim. App. 1995). The use of the phrase "moral certainty," standing alone, would not taint an otherwise sufficient instruction on reasonable doubt. Nichols, 877 S.W.2d at 734. The jury instruction at the petitioner's trial provided as follows:

> By reasonable doubt is not meant that which of possibility may arise, but is that doubt engendered by an investigation of the whole proof, and an inability, after such investigation, to let the mind rest easily as to the certainty of guilt. Absolute certainty is not demanded by the law to convict of any criminal charge, but moral certainty is required, and this certainty is required as to every proposition of proof requisite to constitute the offense and as to every grade of crime charged or included in the indictment.

In our view, there was no due process violation.


Because the Sandstrom grounds rose well before the limitations period commenced, it would not be a viable ground for relief. Because the instructions given in the petitioner's 1985 trial did not violate the principles announced in Cage, a

5

summary denial of relief would have been appropriate even if the statute of

limitations had not barred the action.

Accordingly, the judgment is affirmed.

_____
Gary R. Wade, Judge

CONCUR:

_____
Thomas T. Woodall, Judge

_____
Curwood Witt, Judge

6